Sebago Lake, Songo River and Bay of Naples Steamboat Company

*vs.*

Sebago Improvement Company.

Cumberland.    Opinion March 8, 1909.

*Navigable Waters. Improvement Corporations. Expenditures. Limitation of Same. Evidence. Private and Special Law, 1893, chapter 481, sections 3, 4, 5, 6.*

The defendant company was incorporated under the provisions of chapter 481 of the Private and Special Laws of 1893, with a capital stock of $20,000 and "authorized to improve the Songo river, in the county of Cumberland, its mouths, approaches and tributaries, for the purpose of navigation, and for this purpose to widen, deepen, and remove obstructions from said river, its mouths, approaches and tributaries and to construct dams, canals, locks, breakwaters and piers, and to make such other improvements in said river, its mouths, approaches and tributaries, as may be necessary and proper to facilitate navigation therein." Acting under its charter, the defendant company expended more or less money in improving the river and the navigation thereof. In 1906, however, the plaintiff company

brought an action against the defendant company to recover damages alleged to have been sustained by it through the alleged failure of the defendant company to sufficiently improve the conditions for navigation on the river. The plaintiff company contended, among other things, that even admitting the defendant company had made improvements upon the river under its charter which tended to facilitate navigation, yet it was the duty of the defendant company, regardless of cost, by virtue of its contract with the State, to have made such improvements, even to the extent of constructing a new lock, as to make the river reasonably navigable. As tending to show whether the future improvements sought by the plaintiff, namely, a lock at the mouth of the Songo, was one of the improvements necessary and proper to facilitate navigation, within the meaning of these words as used in the act of incorporation, the defendant offered to show some or all of the following things, namely: 1. The amount of its authorized capital of $20,000 consumed in the economical making of improvements which were made. 2. The amount of this capital paid for flowage rights required for these improvements. 3. The amount of this capital necessarily expended for these improvements, real estate and navigation rights. 4. The cost of the new lock economically constructed. 5. The cost of lowering the lock and dredging the river to the same level economically done. 6. That the running expense for maintaining and operating the lock from the beginning had about equalled the gross receipts. Upon these contentions the Justice presiding declined to admit evidence of any of the offered items of expenditure and cost.

*Held:* That this evidence should have been admitted, as bearing upon the question whether the defendant, in what it had already done and expended, and in view of what it might cost to make the improvements, suggested by the plaintiff as necessary, had reasonably complied with the terms of its charter.

Where the defendant improvement company was incorporated by a special Act of the legislature, with a capital stock of $20,000, and authorized to improve the Songo River, Cumberland County, and, after the improvements contemplated by the Act of incorporation had been made, to charge and receive reasonable tolls for the passage of steamboats and other boats through its locks, and the Act was silent as to the extent of the improvements required of the defendant improvement company, *held,* that the legislature did not intend that the defendant improvement company should be required to expend for improvements a sum larger than its authorized capital stock and net income.

On exceptions and motion by defendant. Exceptions sustained. Motion not considered.

Action on the case to recover damages alleged to have been sustained by the plaintiff through the alleged failure of the defendant sufficiently to improve the conditions for navigation on the

Songo River. Plea, the general issue. Verdict for plaintiff for $3,250. The defendant filed a general motion for a new trial and also excepted to several rulings of the presiding Justice during the trial. The motion was not considered by the Law Court.

The case is stated in the opinion.

NOTE. MR. JUSTICE BIRD having been of counsel for defendant, did not sit in this case.

*Foster & Foster*, and *Charles P. Mattocks*, for plaintiff.
*Bird & Bradley*, and *Brandis, Dunbar & Nutter*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, PEABODY, SPEAR, CORNISH, JJ.

SPEAR, J. This is an action on the case to recover damages alleged to have been sustained by the plaintiff steamboat corporation through the alleged failure of the defendant corporation to sufficiently improve the conditions for navigation on the Songo River.

The defendant corporation was chartered with a capital stock of $20,000 by an act of the legislature dated March 9, 1893, the material parts of which are as follows:

"Section 3. Said corporation is hereby authorized to improve the Songo River in the County of Cumberland, its mouths, approaches and tributaries, for the purpose of navigation, and for this purpose to widen, deepen and remove obstructions from said river, its mouths, approaches and tributaries, and to construct dams, canals, locks, breakwaters and piers, and to make such other improvements in said river, its mouths, approaches and tributaries, as may be necessary and proper to facilitate navigation therein; provided, however, that any dams built or maintained by said company shall contain proper sluiceways for logs.

Section 4. Said corporation is hereby authorized to acquire for the purposes aforesaid by purchase, grant or gift from any person or corporation, and all other corporations are hereby authorized to grant to said Sebago Improvement Company for the purposes aforesaid, and lands, water rights, franchises and other property. Said

corporation may also for the purposes aforesaid take any land or materials upon payment therefor, reasonable compensation to be ascertained in the same manner and under the same conditions as are provided in the cases of laying out public highways. And for any damage by flowage said corporation shall make reasonable compensation to the parties injured, to be ascertained in the same manner as now provided by law in the case of flowing land by erection of dams and mills.

Section 5. After the improvements contemplated by this act shall have been made in said river, its mouths and approaches, the said corporation may demand and receive reasonable tolls for passage through its locks of steamboats and other boats and vessels, but not to exceed the tolls in force in the year A. D. 1891.

Section 6. Nothing in this act contained shall be held to confer authority to either raise or lower the level of Sebago Lake."

The plaintiff corporation was organized on November 14, 1896, and began the business of operating steamboats in 1897. In its declaration it alleges that the defendant was guilty of a breach of duty in failing to make improvements in the Songo river necessary and proper to facilitate navigation therein in accordance with the provisions of its charter whereby the plaintiffs sustained special damages, because it was unable to navigate the river for the carriage of passengers and freight and for the transportation of the United States mail, although under a contract with the U. S. Government and subject to a penalty for failure to do so.

On the other hand, the defendant avers that it made substantial improvements in the Songo river which in fact improved it so as to facilitate navigation therein, and thereafter reasonably maintained such improvements so that steamboats and other vessels were able to navigate the river, and consequently the plaintiff corporation cannot recover the damages which it suffered because it was deprived of the use of the river through the failure of the defendant to make more extensive improvements than were in fact made.

In reply the plaintiff says, even admitting the defendant made improvements upon the river under its charter which tended to facilitate navigation, it was yet its duty, regardless of cost, by

virtue of its contract with the State, to have made such improvements, even to the extent of constructing a new lock, as to make the river reasonably navigable.

To this answer the defendant rejoins that the State in its contract authorized it to issue a capital stock of but $20,000 and therefore could not have intended to impose upon it the duty of making improvements at a cost in excess of its authorized capital and net obtainable income when properly managed.

As tending to show whether the future improvements sought by the plaintiff, namely, a lock at the mouth of the Songo, was one of the improvements "necessary and proper to facilitate navigation," within the meaning of these words as used in the act of incorporation, the defendant offered to show some or all of the following things, namely: 1. The amount of its authorized capital of $20,000 consumed in the economical making of improvements which were made; 2. the amount of this capital paid for flowage rights required for these improvements; 3. the amount of this capital necessarily expended for these improvements, real estate and navigation rights; 4. the cost of the new lock economically constructed; 5. the cost of lowering the lock and dredging the river to the same level economically done; 6. that the running expenses for maintaining and operating the lock from the beginning had about equalled the gross receipts.

Upon these contentions the Justice presiding declined to admit evidence of any of the offered items of expenditure and cost. To these rulings exceptions were taken.

We are of the opinion that this evidence should have been admitted as bearing upon the question whether the defendant, in what it had already done and expended, and in view of what it might cost to make the improvements, suggested by the plaintiff as necessary, had reasonably complied with the terms of its charter. A reasonable compliance was all the duty which the Justice in his able and exhaustive charge imposed upon the defendant. He said: "Now, what had been the previous conditions, the history of the height of water in Sebago Lake, as affecting the knowledge of the defendant as to what should be anticipated, or as affecting its duty

to make provision for it?    It is claimed—whether correctly or not is for you to say—that the drought in 1905 was unprecedented within recent memory, at least; that there had been only one year in later years when it anywhere near approached the condition in which it was in 1905.    Now, that is one of the conditions in the history of the river which must be taken into account in considering what was expected.    What would be reasonable, in other words, because it must be assumed that the legislature expected that the reasonable thing would be done?    And also, that anything more than the reasonable thing was not required.    Now, in view of the past history of the river, was it or was it not reasonable to require the defendant company to do more than they did do?    There has been some talk in your presence that the only practicable remedy for such a condition as existed in 1905 would be the building of a lock at or near the mouth of the Songo River.    In view of the amount of navigation and its character and the frequency or infrequency with which such conditions of height of water existed, or might be expected to exist, was it or was it not reasonable in your judgment that they should have anticipated and made provision by the building of a lock for such condition as did exist in 1905?    I say, it must be a reasonable interpretation.    The defendant company was not a surety or guarantor.    It was only obliged to use reasonable means to facilitate navigation.    Would it be reasonable, or not, to require the company to build a lock, if there was no reason to anticipate the recurrence of what did occur in 1905?    Were such events and such conditions of water liable to happen in the ordinary and usual experience, and if so, how often?    Because all these things must be taken into account in determining the reasonableness—and I may specially say so with regard to the trouble which is alleged to have occurred this time, the natural diminution of water from natural causes; but on the whole, it will be for you to say whether the condition which existed in 1905, and which is the condition complained of here, and which caused the damage, as they say, whether that condition was one which the defendant company was reasonably bound to anticipate and provide for, in view of the situation there."

Previous to this, the Justice had said: "While I have excluded evidence in this case of the expenses which the defendant incurred, under its charter in making the various improvements, because it seemed to me it was not really what it cost to do it but what was done,—that if they assumed to do certain things then they were bound to do it, and if the expense would have been prohibitory, they ought not to have engaged in that business."

From these quotations, it appears that the instructions to the jury confined and limited the question of reasonable compliance on the part of the defendant, in the contemplation of the legislature, solely to what the defendant was required to do physically, and not at all to what it was required to do financially, in order to facilitate navigation. We fear this construction is too narrow.

The act itself requires the defendant to do those things which might be necessary and proper to facilitate navigation. It is silent as to the extent of the improvements required. It is evident that navigation in this river might have been facilitated by the expenditure of any sum of money from $100 to $100,000. The legislature said to the defendant that it might raise the sum of $20,000 on its capital stock for this purpose, and no more, except of course what it might derive from its income. The defendant had no authority to raise another dollar by the issue of stock. In view of this legal limitation, can it be said that the legislature contemplated or expected that this defendant should be required to expend fifty or one hundred thousand dollars in the improvement of this river? It seems to us rather that the physical work contemplated was intended to be limited by the authorized expenditure. We are unable to see how the legislature could reasonably expect a larger expenditure than it had authorized. From what source did they anticipate it could come? The capital stock and income always constituted the limit upon corporate resources. A corporation is never legally required, except by express provision of law, to account for more than these sums. We are not aware that a corporate business has ever been conducted upon any other financial method. We hardly think the legislature contemplated that this corporation should pay out more, in the execution of the duties imposed upon it by its charter.

By a reference to the evidence and to that part of the charge to the jury already quoted, it will be seen that the plaintiff contended that a reasonable improvement of this river required the building of a new lock. It does not appear whether this lock would cost $1000 or $20,000. The defendant offered to show what a proper lock reasonably constructed would cost. If the evidence tended to show that such a lock would cost $20,000, the full amount of the capital stock, did the legislature contemplate or expect that, in addition to the other expenditures which the defendant offered to prove, it was required to expend this amount of money? It seems to us if the defendant could prove, as it contends in argument it could, that the building of a new lock, for instance, which the plaintiff claimed to be a reasonable improvement, would extend its total expenditures to the sum of $50,000, it would clearly show that the requirement of such an outlay was unreasonable. On the other hand, if it could be shown that such a lock, in addition to the other expenditures, would come within the amount of the capital stock and net income, then such a structure might be a reasonable requirement. But, as the defendant was not permitted to show the various items of expenditure which it had actually made, and the cost of the proposed lock, we are unable to say whether the construction of the lock as contended for by the plaintiff would be reasonable or unreasonable in view of the expenditure required. Whether such an expenditure is reasonable, we think is a question of fact which should be submitted to the jury. The other legitimate items of expenditure were also admissible.

*Exceptions sustained.*